IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL MARCAVAGE, et al.,        )
                                  )
            Plaintiffs,           )
                                  )
    v.                            )    No. 06 C 3858
                                  )
CITY OF CHICAGO, et al.,          )
                                  )
            Defendants.           )

MEMORANDUM OPINION AND ORDER

Metropolitan Pier and Exposition Authority ("Authority") has brought a motion for judgment on the pleadings under Fed. R. Civ. P. ("Rule") 12(c), following this Court's issuance of its July 20, 2009 memorandum opinion and order ("Opinion," 635 F.Supp.2d 829).[1] For the reasons stated here, Authority's motion is granted.

**Standard of Review**

Courts review Rule 12(c) motions under the same standard as motions brought under Rule 12(b)(6) (GATX Leasing Corp. v. Nat'l Union Fire Ins. Co., 64 F.3d 1112, 1114 (7th Cir. 1995)): Judgment on the pleadings in a defendant's favor will not be granted unless defendant establishes "beyond doubt that the plaintiff cannot prove any set of facts that would support his

---

[1] That Opinion was issued in response to cross-motions for summary judgment by plaintiffs Michael Marcavage and James and Faith Deferio on the one hand and by the City of Chicago ("City") and the individual police officer defendants on the other. Citations to the Opinion will take the form "Opinion at --," referring to the page numbering in 635 F.Supp.2d.

claim for relief" and "that there are no material issues of fact to be resolved" N. Ind. Gun & Outdoor Shows, Inc. v. South Bend, 163 F.3d 449, 452 (7th Cir. 1998)).[2]

To that end a court must accept as true all facts alleged by plaintiff and must draw all reasonable inferences from the pleadings in plaintiff's favor (id.; Gillman v. Burlington N. R.R., 878 F.2d 1020, 1022 (7th Cir. 1989)). But because such inferences must be reasonable, they cannot be brought into play if they are contrary to the clear and unambiguous words or actions of the parties (N. Ind. Gun & Outdoor Shows, 163 F.3d at 452, explaining that the court is "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim").

As with a Rule 12(b)(6) motion, the aptly named motion for judgment on the pleadings restricts the parties and the court to the contents of the pleadings themselves (id.). But to defeat such a motion a plaintiff may supplement the complaint with an affidavit or brief with additional facts, as long as those facts are consistent with the allegations in the complaint (Help at Home, Inc. v. Med. Capital, L.L.C., 260 F.3d 748, 752-53 (7th

---

[2] Because of the parallelism between the two rules in terms of the standard to be applied, it may well be that the new and tougher Twombly-Iqbal test would operate in the Rule 12(c) context as well (note that the just-cited case speaks in the more generous language redolent of Conley v. Gibson). But this opinion will not pause to deal with that possibility, because the Complaint flunks the easier test in any event.

Cir.2001)).[3]

**Background**

Because the Opinion has already described the principal facts in this case in detail, this opinion will minimally reiterate only those facts relevant to Authority's present motion. That will be followed by a description of the case's earlier procedural history.

**Key Facts**

Navy Pier is owned by Authority, an Illinois governmental unit (First Amended Complaint ["FAC"] ¶6). Gateway Park is located just west of Navy Pier and provides a dramatic entrance to the Pier's facilities (see id. ¶12). As stated in Authority's "Policy for Public Expression at Navy Pier and the Headlands," anyone wishing to engage in public expression on Navy Pier or in Gateway Park must first obtain a permit from Authority (id. ¶14).

On July 16, 2006 plaintiffs went to Navy Pier to engage in public expression of their religious message (see FAC ¶21). Plaintiffs did not obtain a permit before doing so (Opinion at 835). When they arrived at Navy Pier, they were told by Navy Pier security and by Chicago police officer Adam Andrews ("Andrews") that they could not remain on Navy Pier without a

---

[3] This opinion identifies the plaintiffs' and Authority's respective submissions as "P." and "A.," followed by appropriate designations of their memoranda as "Mem. --," "Resp. Mem. --" and "Reply Mem. --."

permit (id.). Andrews later also told them they could not remain in Gateway Park without a permit (id. at 835-36). During the course of plaintiffs' interactions with Andrews, James Deferio was arrested for criminal trespass and taken to the police station (FAC ¶¶24-25). He was not charged and was released from police custody (id. ¶27). Plaintiffs later filed this action.

**Procedural History**

Plaintiffs moved for partial summary judgment against Andrews and the other individual officers named in this action. At the same time, the City and individual officers moved for summary judgment against plaintiffs. Plaintiffs framed their motion and briefing regarding the events at Navy Pier around Andrews' actions and did not refer to Authority's permit policy. In contrast, the City and its officers expressly structured their arguments with reference to the constitutionality of Authority's policy.

In granting the City's and the officers' motion and denying plaintiffs', the Opinion noted that plaintiffs did not respond to the City's and the officers' arguments about the policy until their reply brief, and even then they "left it unclear whether they were challenging the permit requirement on its face or as applied" (Opinion at 840). This Court then went on to find that the permit policy was constitutional on its face (id. at 840-41).

Authority has now moved for judgment on the pleadings on the

4

ground that the Opinion's holding as to the permit policy has "resolve[d] all legal grounds for plaintiffs' claims against the Authority" (A. Mot. at 4).[4]  Plaintiffs oppose Authority's motion, arguing that this Court did not need to reach the issue of the permit's constitutionality because it could have granted the City's and the officers' motion for summary judgment solely on the issue of qualified immunity.  Plaintiffs argue that because they did not present the issue of the permit's constitutionality in their briefs they did not have the opportunity to fully litigate the issue, so that the holding was superfluous (P. Supp. Resp. Mem. at 2-4).

### Issue Preclusion

Because this court has already found that Authority's permit policy is facially constitutional, defensive issue preclusion operates to prevent plaintiffs from relitigating that issue.[5]  As

---

[4]  Authority also properly points out a jurisdictional issue:  Because plaintiffs have taken an appeal from the ruling in the Opinion, this Court has been divested of any control over those aspects of the case that have been appealed, including the issue of the permit policy's constitutionality (see May v. Sheahan, 226 F.3d 876, 879 (7th Cir. 2000)).

[5]  Authority argues instead that the doctrine of law of the case applies, leading to the same result as issue preclusion.  Law of the case, however, "governs the weight that interim rulings in a litigation are given in the subsequent stages of that litigation" (Amcast Indus. Corp. V. Detrex Corp., 45 F.3d 155, 157 (7th Cir. 1995)).  Here, of course, the Opinion represents a *final* determination as to the issues therein.  Thus issue preclusion is more properly applied.  As Amcast, 45 F.3d at 158 teaches (using the old, less precise terminology of "collateral estoppel" rather than "issue preclusion"):

5

explained in Washington Group Int'l, Inc. v. Bell, Boyd & Lloyd, LLC, 383 F.3d 633, 636 (7th Cir. 2004):

> [W]e apply the federal common law of issue preclusion. Under that law, a party seeking to invoke preclusion must show four things:
>
> > 1) the issue sought to be precluded must be the same as that involved in the prior action, 2) the issue must have been actually litigated, 3) the determination of the issue must have been essential to the final judgment, and 4) the party against whom estoppel is invoked must be fully represented in the prior action.

Analysis in terms of those elements confirms beyond dispute that plaintiffs are precluded on the issue of the permit policy's constitutionality.

There is no question as to the first, second, and fourth elements: the issue is the same, it was actually litigated and plaintiffs were active parties in the earlier decision. In resolving the cross-motions by plaintiffs and by the City and its officers, the Opinion expressly found Authority's permit policy facially constitutional.

But as to the third element, plaintiffs (though not expressly arguing against issue preclusion) contend that the Opinion's holding regarding the permit policy's constitutionality was not necessary. According to plaintiffs, because the

---

Collateral proceedings are--collateral. They do not disturb finality. The application of collateral estoppel to prevent relitigation in such proceedings is consistent, therefore, with the principle that collateral estoppel like res judicata applies only when there has been a final judgment.

6

Opinion's grant of summary judgment found Andrews was entitled to qualified immunity, the outcome is not "inconsistent" with their theory of the case (P. Supp. Mem. at 3). Therefore, they say, this Court need not adhere to the Opinion's other holdings in evaluating Authority's current motion.

Plaintiffs' argument appears to center around their position that they did not have the opportunity to be heard on the permit policy's constitutionality because they never intended to challenge it in their motion for partial summary judgment against Andrews. They suggest that the "nature of their claim" against Andrews restricted the issues before this Court to probable cause only and rendered unnecessary all findings as to other issues.

But that ignores not only the basis for the City's contrary position but, more importantly, the true gravamen of plaintiffs' own claim against Andrews. First, although plaintiffs framed their arguments only around the issue of probable cause, the City did not. Indeed, the City placed the issue of the policy's constitutionality squarely at issue in their memorandum in support of summary judgment. Plaintiffs chose not to address those arguments until their reply brief--but they then did so specifically. To suggest, therefore, that they have been deprived of the opportunity to present their constitutional argument is disingenuous at best.

Second, plaintiffs' claim against Andrews could not have

been considered in a vacuum. Their contention that their claim against Andrews was based solely on an alleged lack of probable cause distorts the issues. Andrews was assigned to Navy Pier and, as part of his duty, was authorized to enforce the policies and procedures established by Authority as related to the Pier and Gateway Park.[6] Plaintiffs' attempt to rely on Grossman v. City of Portland, 33 F.3d 1200 (9th Cir. 1994) in that respect is misplaced. Grossman does not hold that a claimant can restrict the court's evaluation of a claim by partitioning the issues. Instead it teaches that a court cannot overlook the true nature of a claim (there, as here, the constitutionality of governmental action) in considering the issues (see id. at 1203-04).

Even though plaintiffs are correct in stating that the Opinion found Andrews was entitled to qualified immunity, they gloss over--or more precisely ignore entirely--the vital fact that it did so only after stating that it had already substantively "torpedoe[d] all of plaintiffs' claims in

---

[6] Not to their credit, plaintiffs' arguments about Andrews' actions have changed since their briefing on the cross motions. For instance, plaintiffs' argument on summary judgment was that Andrews was not likely to have been aware of the permit requirement, so that his actions were independent of the permit policy (see P. S.J. Reply Mem. at 8-9). But in their supplemental response to the present motion, they change their tune and claim it is likely he was aware both of the permit policy and of Authority's practice of not requiring permits for small groups in Gateway Park, so that he lacked probable cause to arrest Deferio (P. Supp. Resp. Mem. at 7). Plaintiffs cannot have it both ways, as this Court has already warned their counsel in its August 21, 2009 memorandum order.

8

substantive terms" (Opinion at 844). Indeed, it was the treatment of the qualified immunity issue that was the "and by the way" portion of the Opinion, unnecessary to the result--as Opinion at 844 said:

> But because the parties have also expended considerable effort on the other (and alternative) string to the individual defendants' legal bow--the doctrine of qualified immunity--this opinion goes on to discuss that subject as well.

Plaintiffs are in essence asking this Court to pick and choose among its earlier holdings, adhering to some and not to others, simply because from plaintiffs' perspective some would allow their case to proceed and others would not. This Court will not do so.[7] Because the Opinion expressly found Authority's permit policy to be facially constitutional, that finding has preclusive effect (see Grip-Pak, Inc. v. Ill. Works, Inc., 694 F.2d 466, 469 (7th Cir. 1982)).

**Conclusion**

Because plaintiffs are precluded from relitigating the constitutionality of Authority's permit policy, Authority's motion for judgment on the pleadings is granted, and this action is dismissed against it. Because that is the last open issue in

---

[7] Ironically, if this Court did engage in that selective approach, the just-quoted language from the Opinion demonstrates that plaintiffs and not their opponents would still come out on the short end.

the case, the action itself is dismissed with prejudice.

```
                         _____
                         Milton I. Shadur
                         Senior United States District Judge
```

Date:  December 16, 2009